### MILES v. GADSDEN *ET AL.*

#### (137 S. E., 204)

PRINCIPAL AND AGENT—MORTGAGEE HELD TO HAVE RATIFIED MORTGA-GOR'S PAYMENT TO SUPPOSED AGENT OF MORTGAGEE BY FILING OF CLAIM AGAINST SUPPOSED AGENT'S ESTATE.—Where mortgagee, after learning of payment by mortgagor to a supposed agent who had not remitted to mortgagee, filed a claim for the amount of such payment against the estate of such agent, such act constituted a ratification of the payment to the agent precluding recovery against the mortgagor after agent's estate was found to be insolvent.

Before MEMMINGER, J., Charleston, June, 1925. Affirmed.

Foreclosure suit by Adeline J. Miles against Archie Gadsden and another. From a decree allowing plaintiff partial relief, she appeals.

The following is the Master's report, confirmed by the decree appealed from:

This is an action for foreclosure of mortgage of real estate, referred to me by order dated the 17th day of October, 1924.

I have held references, the minutes of which, together with the bonds and mortgages in suit, are herewith filed.

I find that on the 22d day of December, 1920, the defendant, Archie Gadsden, executed and delivered to Adeline J. Doscher, now the plaintiff, Adeline J. Miles, his bond conditioned for the payment of the principal sum of one thousand ($1,000.00) dollars, three years from date, with interest at the rate of eight (8) per cent. per annum, payable quarterly, and that on said 22d day of December, 1920, the said Archie Gadsden executed and delivered to the said plaintiff his mortgage, reciting the said bond and his intention to secure the same, of the premises on the west side of Norman Street in the City of Charleston, described in the complaint, which mortgage contained the usual clauses for the payment of taxes, insurance, and attorney's fees, and was duly recorded in the R. M. C. O. for Charleston County in Book H-31, p. 90.

I find that the said Archie Gadsden, on the 10th day of January, 1923, executed and delivered to the defendant, Mrs. R. W. Seymour, his bond conditioned for the payment of the principal sum of seven hundred thirty-eight dollars and sixty-five cents ($738.65) on the 1st day of January, 1924, with interest at eight (8) per cent. per annum, payable quarterly, and that on said day, in order to secure the payment of the said bond, the said Archie Gadsden executed and delivered to Mrs. R. W. Seymour his mortgage

of the premises on the west side of Norman Street subject to the mortgage to the plaintiff herein, which mortgage contained the usual clauses for the payment of taxes, insurance, and attorney's fees, and was duly recorded in the R. M. C. O. for Charleston County in Book M-30, p. 312.

The sole question at issue is as to the amount due upon the bond and mortgage of Archie Gadsden to Adeline J. Doscher.

I find that Gadsden paid to the late A. A. Kroeg, on the 27th day of June, 1921, the sum of two hundred ($200.00) dollars on account of the principal of this bond. It appears that Kroeg represented Gadsden in securing the loan and represented the plaintiff as attorney in examination of the title and execution of papers, and that interest payments were regularly made by Gadsden to Kroeg for the plaintiff's account. There was no testimony to show that Kroeg was the authorized attorney for the plaintiff to receive and receipt for payments on account of the principal. Upon the death of A. A. Kroeg in February, 1922, P. M. MacMillan and John T. Witsell were appointed administrators of the said estate, and at that time and for some time thereafter it appeared that the estate was solvent. Gadsden filed a claim with the administrators of Kroeg for this payment, in which he stated that the payment had been made on account of the Doscher mortgage. This claim appears to have been filed at the instance of E. K. Hinson, who was employed by or associated with Kroeg at the time of his death, and thereafter undertook to represent a number of creditors of the Kroeg estate. Thereafter, in proceedings entitled E. L. Jager et al., Executors, against MacMillan and Witsell, Administrators of Kroeg, the settlement of the Kroeg estate was brought under the jurisdiction of this Court and the creditors notified to file their claim with me as Master. Thereafter Freda C. Dosher, the authorized agent of the plaintiff, filed her petition and claim in the said cause, alleging under oath that various collections, including the

payment of Archie Gadsden on account of the Doscher mortgage above referred to, were made by the said A. A. Kroeg prior to his death, and that said amounts are due to be paid to petitioner by the said estate. However, no claim was filed by Gadsden with the Master. I am of the opinion that the claim against the estate of Kroeg was abandoned by Gadsden and that the filing of the claim by the plaintiff's agent was a ratification of the payment by Gadsden to Kroeg for the account of Doscher as a credit on the mortgage debt. This claim has been passed in favor of the plaintiff in the Jager proceeding.

As stated, the administrators of the estate of Kroeg considered the estate solvent, but it then came to appear, from the number of claims filed and the nature of the assets, that claims against the estate would not be paid in full.

Subsequent to the death of Kroeg, a number of payments were made by Gadsden to E. G. Hinson, who represented the plaintiff, during the period covered by such payments, as attorney, but without authority to receive and receipt for payments on account of this debt. Gadsden was, however, required to pay interest on the amount of the original indebtedness upon Hinson's assurance that, upon settlement of the Kroeg estate, the matter of interest payments would be adjusted.

Some time during this period, Brantley Seymour, Esq., representing Gadsden, computed the amount due to the plaintiff on the Gadsden mortgage debt from receipts held by Gadsden for payments made to both Kroeg and Hinson, and paid over to Hinson, in full settlement of the amount due, the sum of six hundred eighty-five ($685.00) dollars with confidence that Hinson was either authorized to accept the settlement, or, as a reputable attorney, he would secure for record a satisfaction of the mortgage and a discharge of the bond. Being unable to obtain the satisfaction and discharge through Hinson, Mr. Seymour had the good fortune to obtain a refund from Hinson of this six hundred

eighty-five ($685.00) dollars, which amount he paid over on the 17th day of September, 1924, after the institution of this proceeding, to plaintiff's attorneys in full, or part settlement of the amount due, as the Court might determine.

I find that the bond of Gadsden to Doscher is subject to credit of two hundred ($200.00) dollars on account of principal, as of the 27th day of June, 1921, with quarterly payments of twenty ($20.00) dollars each on account of principal and interest up to the March quarter of 1924, leaving due upon the bond so secured by the said mortgage the balance of that date, with ten (10) per cent. as attorney's fees as provided in and by said mortgage, subject to the credit of six hundred eighty-five ($685.00) dollars paid to plaintiff's attorneys on the 17th day of September, 1924.

I find that there is due upon the bond of Archie Gadsden to Mrs. R. W. Seymour the sum of three hundred eighty-eight dollars and sixty-five cents ($388.65) with interest at eight (8) per cent., payable quarterly, from the 1st day of October, 1924.

I therefore respectfully recommend that, upon payment by the defendant, Archie Gadsden, to the Master herein of the sum herein found to be due to the plaintiff, to be computed to the date of such payment, this cause be decreed to be settled and ended.

I further recommend that, upon failure of the defendant, Archie Gadsden, within thirty (30) days from final adjudication of the question here raised, to make the settlement herein recommended, the Master be in that event authorized and directed to sell the mortgaged premises by public auction, after due advertisement, at Charleston Real Estate Exchange, in the City of Charleston, upon such terms as the Court shall direct, and apply the proceeds of sale, after the payment of proper costs and expenses of this proceeding and of such sale and of any liens for past-due taxes as-

sessed against the mortgaged premises to payment of the respective mortgage liens herein reported, and that the balance, if any, be returned to Archie Gadsden.

*Messrs. Miller, Huger, Wilbur & Miller,* and *John J. Murray,* for appellant, cite: *Effort by principal to recover from agent on unauthorized contract does not bar principal's right to recover from persons with whom the agent dealt:* 58 Fed., 203; 9 Grant Ch., 446; 135 S. W., 104; 56 N. W., 663. *Filing claim against agent's estate did not alter rights of parties:* 127 S. E., 562; 138 S. E., 834. *Knowledge an essential element of ratification:* 21 R. C. L., 928; 36 S. C., 384. *Alleged agent must have acted in name of and for benefit of alleged principal:* 21 R. C. L., 923; 104 S. E., 31.

*Mr. Nath. B. Barnwell,* for respondent, cites: *Acts sufficient to show agency:* 127 S. E., 562; 122 S. E., 511; 133 S. E., 451; 133 S. E., 834. *Concurrent finding of Master and Circuit Judge in equity case will not be disturbed on appeal unless it appears by the preponderance of the evidence that the findings are erroneous:* 100 S. C., 157; 97 S. C., 106; 103 S. C., 309; 114 S. C., 186; 117 S. C., 454.

December 20, 1926, on petition for rehearing.

March 18, 1927.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

ORDER ON PETITION FOR REHEARING

Filed March 18, 1927

It appearing to the Court that in the former opinion, filed in this cause, the matter of the ratification of the agency of Kroeg by the plaintiff appellant may not have been fully passed upon, it is, therefore, ordered and adjudged that the former opinion in this cause be, and the same is hereby withdrawn, and that the annexed opinion be declared the opinion of the Court in this cause, and that the same shall be filed and substituted for the former opinion.

It is further ordered that the petition for a rehearing in this case be, and the same is hereby, dismissed.

R. C. WATTS, C. J.
EUGENE S. BLEASE, A. J.
JOHN G. STABLER, A. J.
C. J. RAMAGE, A. A. J.

I dissent: T. P. COTHRAN, A. J.

## OPINION

Ordered Substituted for Opinion Filed in Above Case
December 20, 1926

MR. JUSTICE BLEASE: This Court is entirely satisfied with the report of F. K. Myers, Esq., Master for Charleston County, in the above-entitled cause, which was confirmed by the decree of the late Hon. R. W. Memminger, Circuit Judge. Let the report of the Master be reported.

It is, therefore, ordered that the decree of the Circuit Judge be affirmed.

MR. CHIEF JUSTICE WATTS, and MR. JUSTICE STABLER and MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE concur.

MR. JUSTICE COTHRAN (dissenting): On account of the fact that the opinion first filed in this case has been withdrawn, the dissenting opinion heretofore filed by me is also withdrawn, and this opinion is to be taken as a dissenting opinion to the opinion last submitted and to the order dismissing the petition for a rehearing.

The opinion last submitted is a formal one, affirming the decree of his Honor, Judge Memminger, which confirmed the Master's report in favor of the defendant, in "short form"; hence attention must be directed to the Master's report. The undisputed facts are as follows:

On December 20, 1920, the defendant, Archie Gadsden, borrowed from the plaintiff, Adeline J. Miles, then Doscher, $1,000, and executed to her his bond therefor, payable December 20, 1923, with interest at 8 per cent. per annum,

payable quarterly, secured by a mortgage upon the premises described in the complaint, which included the usual clauses for the payment of taxes, insurance, and attorney's fees. The loan was obtained through an attorney, A. A. Kroeg, since deceased, who represented Gadsden in obtaining the loan, and Mrs. Miles in the examination of the title and execution of the papers. The bond and mortgage, made payable to Mrs. Miles, were delivered by Kroeg to her after the mortgage had been recorded, and continuously thereafter remained in the possession of Mrs. Miles. Her quarterly payments of interest due up to and including December 20, 1921 (four in all), were regularly paid by Gadsden to Kroeg and by him remitted to Mrs. Miles. Kroeg died on February 6, 1922. Thereafter the quarterly payments of interest were made by Gadsden directly to Mrs. Miles up to and including March, 1924. Prior thereto, on June 27, 1921, two and one-half years before the maturity of the bond (December 20, 1923), Gadsden paid to Kroeg $200 on account of the principal of the bond, which Kroeg never remitted to Mrs. Miles. The contest between the parties is with reference to this payment; Gadsden claiming, and Mrs. Miles denying, that he is entitled to credit on the bond therefor.

The Master found, and the Circuit Judge confirmed his report to that effect, that—

"There was no testimony to show that Kroeg was the authorized attorney for the plaintiff to receive and receipt for payments on account of the principal."

He found, however, that Mrs. Miles had ratified the authority of Kroeg to receive the $200 payment of June 27, 1921, made by Gadsden to Kroeg on account of the principal of the bond, and that, therefore, Gadsden was entitled to credit for it. The admitted fact, and the only fact upon which this conclusion was reached, is that, after the death of Kroeg, a creditors' bill having been instituted by Jagar and others against the administrators of Kroeg for

a settlement of his estate and creditors called in, Mrs. Miles filed her claim against the estate of Kroeg for the $200 received by him from Gadsden for her. The correctness of that conclusion, a matter of law from admitted facts, is the only issue in this appeal, for otherwise there is presented a case of a payment upon principal before maturity, upon a bond and mortgage in the possession of the mortgagee, to a person conceded to have been without authority to receive it, and without question as to his authority.

I may say, in passing, that there are so many points of difference between the case at bar and that of *Cogswell v. Cannady,* 135 S. C., 365; 133 S. E., 834, that the latter case is of little or no value in the determination of the issue presented: (1) In the *Cogswell case,* Kroeg was found to have been the agent of Cogswell in the collection of a part of the principal; here it has been specifically adjudicated that Kroeg in the collection of the $200 on account of the principal was not acting as the agent of Mrs. Miles. (2) In the *Cogswell case,* it was found as a fact that Cogswell had ratified the act of Kroeg; here that is the issue. (3) In the *Cogswell case,* the bond and mortgage were executed to Kroeg and assigned to Cogswell. Here they were executed directly to Mrs. Miles. (4) In the *Cogswell case* the payment on principal was made to Kroeg after the maturity of the bond; here it was made 2½ years before.

In the transaction of receiving the $200, Kroeg must have been the agent of some one. Certainly not of Mrs. Miles, for it has been distinctly adjudicated that he had no authority from her. By exclusion, then, he must have been the agent of the mortgagor, and, as such, accountable to him for the $200 collected. The mortgagor has so recognized the relation by filing a claim against the estate of Kroeg for the amount.

At the same time, if Gadsden paid the money to Kroeg for Mrs. Miles, Kroeg by his receipt of it became the trustee of an express trust; Mrs. Miles being the beneficiary.

Not only this, but it is a familiar principal that, when an act is done, or an engagement undertaken, for the benefit of a third person, such third person, even if he had been unaware of the circumstances, has a valid cause of action upon such act or .engagement. *Butler v. Western Union Tel. Co.,* 62 S. C., 222; 40 S. E., 162. *Mims v. Seaboard Air Line R. Co.,* 69 S. C., 338; 48 S. E., 269. *Broom v. Western Union Tel. Co.,* 71 S. C., 506; 51 S. E., 259; 4 Ann. Cas., 611. *Mack Mfg. Co. v. Bonding & Insurance Co.,* 103 S. C., 55; 87 S. E., 430. So that Mrs. Miles had a right of action against Kroeg, not only upon the ground that the payment by Gadsden to him was for her benefit, but upon the ground that the transaction constituted her the beneficiary of an express trust. At the same time she had a cause of action against the mortgagor upon the mortgage which had not been credited with the payment. The concrete question, then, is, Did she have the right to pursue her remedy against Kroeg without surrendering her remedy against the mortgagor? The respondent asserts the negative of this question, upon the ground that, in filing her claim, the plaintiff has ratified the act of Kroeg, unauthorized, to receive the payment from the defendant.

Ratification of the unauthorized act of an agent or of a stranger is largely a matter of intention; and while certain conduct will be held to have constituted a ratification, where such is the legal effect, notwithstanding the fact that the person may not have so intended it, the law should not so construe it where there is another reasonable ground to sustain the intention that there should be no such ratification.

Does any one suppose that Mrs. Miles, in pursuing a remedy which she unquestionably had, intended to assume responsibility for the payment which Gadsden voluntarily made to Kroeg? And if there be a reasonable explanation of her purpose, sufficient to prevent the legal conclusion of ratification, it should be adopted. I do not think, how-

ever, that this is at all a question of ratification, but rather of the right of a creditor to pursue his remedy against either or both of two debtors.

Of course, a principal may ratify the unauthorized act of his agent, and one may ratify the unauthorized act of a stranger who has assumed to act as his agent. But in the latter case the stranger must have assumed to act as agent and the ratification must be of the stranger's act as agent. If the one sought to be charged with ratification has a cause of action against the stranger independent of any relation of principal and agent, his act which is claimed to have been a ratification of the agency, is referable to the independent cause of action and not to an assumed agency.

In the case at bar it is adjudicated that Kroeg was not the agent of Mrs. Miles to receive the payment upon the principal. There is no evidence that in doing so he assumed to act as her agent. The evidence shows that he received the money as the agent of Gadsden, with direction to pay it to Mrs. Miles either express or by implication.

"Ratification means adoption of that which has been done for and in the name of another; hence the contract at its inception must purport to be the contract of the principal. There can be no ratification where it appears that the person who made the contract was not at the time, and did not profess to be, acting on behalf of the alleged principal." 21 R. C. L., 923.

Kroeg took advantage of the credulity of Gadsden to receive the payment, and, as subsequent events developed, with intent to appropriate it to his own use. Gadsden does not contend that he paid the money to Kroeg as the agent of Mrs. Miles. He says, referring to a conversation with Mrs. Miles, after the death of Kroeg (he never knew or even saw her before) :

"I tell her had I know I been dealing with her through Mr. Kroeg, I would come and ask her for information," etc.

In all the cases of ratification of the unauthorized act of an agent or of a stranger, the party sought to be charged with ratification has proceeded upon the theory of recognition of the agency or assumed agency. The plaintiff in the case at bar has not proceeded upon such theory, but upon the ground that Kroeg received money intended for her, repudiating any idea that he received it assuming to be her agent.

If a man should steal my horse and sell it to another, I would have a remedy against him for damages, and also a remedy against the purchaser for the possession of the stolen property. Could it be contended that, by pursuing my remedy against the thief, I had ratified the theft and the sale to the third person? I do not think so. The point is that, independently of the supposed contract, I would have a cause of action against the thief, in no sense owing its validity to the contract.

In *Crute v. Burch,* 154 Mo. App., 480; 135 S. W., 1004, the owner of a mare and mule colt directed his agent to sell the mare for $60.00. The agent sold both mare and colt for $115.00, and accounted to his principal for only $60.00. The purchaser of the colt sold it to the defendant. The owner valued the colt at $60.00, and endeavored, through an attorney, to collect that amount from the agent. He then brought replevin against the vendee of the purchaser from the agent for the colt. The Court disposed of the contention of the defendant as follows:

"And it is further contended that plaintiff, by entering into negotiations with [agent] for collection of the price of the mule, he ratified the contract of sale. This position is equally as untenable as the first. He did not agree to take [the agent] as paymaster for the price of the mule, but was willing that he should pay for it. Surely it cannot be said this can be construed as an affirmance of the theft of the mule. Had he accepted from [the agent] the price

of the mule, or had he agreed to look to him for its payment, that would have been an affirmance of the sale."

In *Barnsdall v. O'Day* (C. C. A.), 134 F., 828, it was held, quoting syllabus:

"The bringing of an action by a principal against his agent in the purchase of lands for the amount of a commission secretly paid him by the vendor does not operate to ratify the contract, so as to discharge the vendor from liability in damages for fraud and deceit, by which, with the assistance of the agent, the sale was induced."

In 31 Cyc., 1282, it is said:

"A suit against the agent for moneys wrongfully received is not necessarily a ratification, as to third persons, of the agent's unauthorized contract."

In *Bank of St. Mary's v. Calder*, 3 Strob., 403, it was held that, where money has been wrongfully lent by the agent without taking sufficient security, an action in *assumpsit* by the principal against the borrower to recover the money lent is not an approval of the security taken, and will not relieve the agent from liability.

In *Brown v. Foster*, 137 Mich., 35; 100 N. W., 167, it was held (adopting as the substance of that decision what is declared in 31 Cyc., 1282):

"Where an agent makes an unauthorized sale and delivery of property, amounting to a conversion, the owner may, without ratifying the sale as made, waive the tort and sue the agent on the common counts in *assumpsit* to recover the value of the property."

The distinction which I am endeavoring to draw is illustrated by an Alabama case (*Newman v. Morgan*, 202 Ala., 606; 81 So., 548). In that case the plaintiff authorized his agent to settle a claim against a railroad company, which he accomplished for $1,250.00. The plaintiff sued the agent for $1,250.00, and upon the trial denied that he had authorized or accepted the terms of the settlement. The Court held that the issue as to this fact was negligible, as

the plaintiff by that suit had ratified the settlement. There the ratification was based upon recognition of a contract, as here, upon practically a claim for money had and received.

In the *Cannady case,* after the death of Kroeg, Cannady, the mortgagor, filed a claim against the estate for the payments which Cannady had made to Kroeg, and which he had failed to remit to Cogswell. Touching the contention that Cannady had ratified the conduct of Kroeg as his agent, the Circuit Judge held (affirmed by this Court) :

"The fact that Cannady filed a claim against the estate of Kroeg is not inconsistent with his contention that agency existed between Kroeg and Cogswell; for one can make a demand on the agent without waiving any rights against the principal, and Cannady was merely trying to aid Cogswell in collecting his money by filing a claim."

If this be true why can it not be said with equal propriety :

"The fact that Mrs. Miles filed claim against the estate of Kroeg is not inconsistent with her contention that agency existed between Kroeg and Gadsden; for one can make a demand on the agent without waiving any rights against the principal, and Mrs. Miles was merely trying to aid Gadsden in collecting his money by filing a claim."

I think for the same reason that Mrs. Miles did a very proper thing, in filing her claim against the estate of Kroeg, for her own benefit, as well as for that of Gadsden. She was not at all responsible for the unfortunate situation in which Gadsden had placed himself, and certainly should not by that act, which not only did not alter Gadsden's situation to his prejudice, but was positively in his interest, be held to have waived any of her rights against him. It appears that Gadsden, too, filed his claim against the estate of Kroeg for the money paid by him on the principal. It seems unfair to prejudice Mrs. Miles' interests by reason of the same act which is made quite innocent in Gadsden.

The authorities cited by the writer in his dissenting opinion in the case of *Land v. Reese,* 136 S. C., 267; 134 S. E., 252, are full to the point that, although an agent may be authorized to collect the interest, and also the principal when it shall become due, this authority does not imply the authority to collect it before it becomes due, which was done in the case at bar.

I think, therefore, that the judgment of the Circuit Court should be reversed. Being of that opinion, I dissent from the order dismissing the petition for a rehearing.

Let this opinion stand as a dissent to the revised opinion of Mr. Justice Blease, and as a dissent to the order dismissing the petition for a rehearing; my former dissenting opinion being withdrawn.